Kass Harstad (Bar No. 11012)
**STRINDBERG & SCHOLNICK, LLC**
675 East 2100 South, Suite 350
Salt Lake City, Utah 84106
(t) 801.359.4169
(f) 801.359.4313
email: kass@utahjobjustice.com

*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **WILLIAM CLARK,**<br><br>Plaintiff,<br><br>vs.<br><br>**CANYONS SCHOOL DISTRICT**, a political subdivision of the State of Utah, and **BRUCE YOUNG**, an individual,<br><br>Defendants. | **COMPLAINT**<br>**AND JURY DEMAND**<br><br>Civil No.<br><br>Judge |

Plaintiff William Clark ("Plaintiff" or "Mr. Clark"), by and through his attorneys, hereby complains against Defendants Canyons School District ("Canyons" or the "District"), and Bruce Young ("Mr. Young") (collectively "Defendants") as follows:

### I.   NATURE OF THE CLAIMS

1.   This suit is brought by Plaintiff under Title VII of the Civil Rights Act of 1964, as amended and codified at 42 U.S.C. §2000e, *et seq.* ("Title VII"); 42 U.S.C. §1981 (§1981); 42 U.S.C. §1983 ("§1983"); and the Family Medical Leave Act of 1993 codified at 29 U.S.C. §2601 ("FMLA").

2.   Plaintiff is an African-American male, whose skin is a dark brown color. Plaintiff was employed by the District, and while working in the Transportation Division, he suffered race

discrimination and a hostile work environment, as well as retaliation. Specifically, Defendants failed to promote Mr. Clark in favor of non-African American employees, subjected Mr. Clark to offensive and derogatory statements and slurs, and retaliated against Mr. Clark after he complained of Defendants' behavior. Defendants also retaliated against Mr. Clark for taking FMLA leave.

3. Plaintiff seeks equitable relief, economic, compensatory, and punitive damages, along with interest and attorneys' fees and costs.

## II. PARTIES

4. Mr. Clark resides in the State of Utah, Salt Lake County, and was employed by Canyons School District at all times relevant to the allegations in this Complaint.

5. Defendant Canyons School District is a political subdivision of the State of Utah.

6. Defendant Bruce Young is a citizen of the State of Utah and the Transportation Director at the District. Mr. Young is being sued under 42 U.S.C. §1983 in his official and individual capacities for all available relief. Additionally, he is personally liable under 42 U.S.C. §1981 for the discrimination, harassment and retaliation referenced herein.

## III. JURISDICTION AND VENUE

7. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1331.

8. Venue is proper with this Court pursuant to 28 U.S.C. §1391(b) because all the employment practices or individual acts alleged to be unlawful occurred within the jurisdiction of this Court.

9. On or about July 7, 2016, Mr. Clark filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC"), alleging a hostile work environment, discrimination, and retaliation on the basis of race.

10. Mr. Clark amended the Charge of Discrimination on August 18, 2016, and again on April 3, 2017.

11. The EEOC issued Mr. Clark a Notice of Right to Sue dated July 21, 2017.

12. Mr. Clark complied with the administrative requirements set forth in 42 U.S.C. §2000e-5 and 29 U.S.C. §633a.

### IV. GENERAL ALLEGATIONS

13. Mr. Clark is African-American (or Black) and has dark brown skin.

14. Mr. Clark has a long history working in dispatch and as a bus router. Specifically, Mr. Clark worked as a Routing Coordinator for the Salt Lake Winter Olympic Committee from 2000 to 2002. Thereafter, he served as a Physical Education paraprofessional for the Salt Lake City School District between 1999 and 2006. And in 2006, Mr. Clark moved to the SLC School District's Transportation Division, where he was a bus driver, worked in dispatch and was a router for the summer bus drivers. He worked for SLC School District until 2015.

15. In 2015, Canyons hired Mr. Clark to work as a bus driver in its transportation division.

16. In May 2015, Mr. Clark applied for a routing position with Canyons.

17. Despite Mr. Clark's previous experience and qualifications, Canyons did not select Mr. Clark for the router position, but rather gave the position to a white male dispatcher named Greg Hale.

18. Mr. Clark was far more qualified than Mr. Hale for the router position.

19. Mr. Hale's co-workers had numerous conversations with Transportation Director, Bruce Young, and routing supervisors, Jeff Wren and Lorraine Miles, in which they reported Mr. Hale's lack of work ethic. These co-workers also informed Mr. Young, Mr. Wren and Ms. Miles

that Mr. Hale watched in inordinate amount of soccer on TV during work hours and seemed unable to grasp the dispatch position.

20. Yet Canyons promoted Mr. Hale over Mr. Clark, who has an exceptional work history.

21. In July 2015, Mr. Clark applied for the dispatch position created by Mr. Hale's promotion to router. However, despite Mr. Clark's experience in dispatch, the District gave the position to another bus driver, Manny Aguire, who is Hispanic.

22. Canyons used a hiring panel, consisting of Mr. Young, Mr. Wren, and Mr. Young's assistant, Carey Carter, to evaluate the applicants to the dispatch position.

23. Mr. Wren indicated that Canyons selected Mr. Aguire because he was awarded more "points" than Mr. Clark.

24. However, it is clear from Mr. Clark's screening scoring sheets from July 2015 that Mr. Clark was not given points to which he was clearly entitled.

25. For example, the scoring sheets indicate that an applicant should receive one point for including a cover letter, one to two points for "job related experience," and one to two points for "District/School/USOE/Depart[ment] Experience."

26. Although Mr. Clark included a cover letter, had worked in schools for over 15 years, and had been a driver and/or dispatcher for ten years (and therefore should have received 5 points total for these items), Mr. Young and the other scorers gave him zero to one point total for all three categories.

27. Additionally, it is clear that Mr. Clark was more qualified for the dispatch position than Mr. Aguire based on feedback Canyons received from Mr. Aguire's co-workers

28. For example, Mr. Aguire admitted that he had no computer experience, and when Mr. Aguire was a driver, dispatch employees informed Mr. Wren that Mr. Aguire frequently overslept and missed his driving route.

29. Despite these complaints, Canyons promoted Mr. Aguire instead of Mr. Clark.

30. Canyons refusal to promote Mr. Clark was due to Bruce Young's racial animosity towards African Americans.

31. Indeed, sometime during the summer or fall of 2015, Mr. Clark learned that Mr. Young had stated to the Canyons' head mechanic: "When I was a cop, I used to whoop n***ers' asses like Will."

32. This information was very disturbing to Mr. Clark, not only because Mr. Young used an extremely offensive racial epithet, but also because the comment essentially threatened violence towards Mr. Clark.

33. In March 2016, Mr. Aguire quit the dispatch position, and the dispatch job was reposted with an application period of March 23rd to March 28th.

34. Canyons reposted the position on March 29th, even though Mr. Clark and six other people had applied for the dispatch position during the initial application period.

35. Mr. Clark asked one of the District's attorneys, Jeff Christensen, whether he (Mr. Clark) needed to reapply. Mr. Clark also stated that he did not believe he was "getting a fair shake" in the promotion process, and he told Mr. Christensen that Mr. Young had been overheard saying that he "used to whoop n***ers' asses like Will."

36. In response, Mr. Christensen simply informed Mr. Clark that the position had been reposted because of a "computer glitch" and that Mr. Clark's prior application would be considered.

37. Canyons did not investigate Mr. Clark's report of discrimination.

38. Mr. Christensen's purported reason for reposting the March 2016 dispatch position (a "computer glitch") is not supported by facts.

39. Ms. Carter told dispatch employees that she was impressed with the candidates for the dispatch position, but nonetheless, Mr. Young wanted the position reposted because he wanted to see "more" (*i.e.*, different) candidates.

40. The Human Resources employee responsible for posting jobs also told Mr. Clark that she reposted the position not because of a computer glitch, but because Mr. Young asked her to.

41. Additionally, Mr. Young told routing supervisor Lorraine Miles that "Will Smith will *never* get this job. I will never hire him." It is clear that Mr. Young was referring to Mr. Clark, and purposely used the name Will *Smith* (a popular black actor) to poke fun at Mr. Clark.

42. When the position was reposted (and the reason for reposting was proven false), Mr. Clark retained an attorney. Thereafter, on April 5, 2016, Mr. Clark sent the District's attorney (Dan Harper) and Mr. Christensen an email stating that he had retained an attorney who would be helping him file a Charge of Discrimination against the District.

43. Thereafter, on April 21st, Mr. Young called Mr. Clark and offered him the dispatch position.

44. On Monday, April 25th, Mr. Clark's attorney notified Canyons that Mr. Clark would take the dispatch position only if Bruce Young and Mr. Young's supervisor, Assistant Superintendent Dowdle, immediately went through discrimination training.

45. Shortly thereafter, Mr. Christensen informed Mr. Clark's attorney that Canyons would put Mr. Young and Assistant Superintendent Dowdle through discrimination training, and

that such training would occur as soon as possible based on Assistant Superintendent Dowdle's schedule.

46. Mr. Christensen also informed Mr. Clark's attorney that Mr. Clark would not report directly to Mr. Young, but instead to Carey Carter (Mr. Young's assistant).

47. Based on these assurances, Mr. Clark called the District on Monday, April 25th, and accepted the dispatch position.

48. Mr. Clark started the dispatch position on approximately Tuesday, April 26th and immediately experienced retaliation from his supervisors in several ways.

49. For example, Ms. Carter started ignoring Mr. Clark and setting him up to fail by not allowing overtime for other dispatchers to train Mr. Clark.

50. Canyons' dispatchers generally work overtime, especially when training a new dispatcher. Indeed, Mr. Aguirre was trained for most of the 2015 summer before he even started working during the school year. Additionally, new dispatchers like Mr. Clark are never left to handle the phones alone.

51. Despite this, Ms. Carter did not allow dispatch employees to work overtime. In fact, she started going into Dispatch at 2 PM, and ordering one of the dispatchers to leave, even though this dispatcher was willing to work overtime to train Mr. Clark.

52. Another dispatcher who was quitting offered to spend two weeks training Mr. Clark, but Mr. Young refused to allow Mr. Clark to receive any training.

53. As a result, Mr. Clark did not receive adequate training, and he was frequently left alone to handle emergency phone calls.

54. Ms. Carter also spread rumors about Mr. Clark. Approximately one day after Mr. Clark started in dispatch, Ms. Carter told a transportation employee that Mr. Clark needed to get legal representation to get the job.

55. Ms. Carter's comments caused many drivers and transportation employees to begin gossiping about the supposed "lawsuit" that Mr. Clark had against Canyons, and many took the position that Mr. Clark had to "file a lawsuit" or hire a lawyer to get the promotion to dispatch.

56. Ms. Carter's rumor-mongering led drivers and transportation employees to assume that Mr. Clark was not qualified for the position.

57. These rumors also greatly affected Mr. Clark's work environment. For example, on or about April 29, 2016, Mr. Clark learned that the District's head custodian had stated to transportation employees, "I guess Will [Clark] had to hire a lawyer just to get a promotion," and the custodian had used the term "n***er" repeatedly during the conversation (presumably in reference to Mr. Clark).

58. At around this same time, Mr. Clark learned that this head custodian had also made extremely racist comments to one of the dispatchers, asking her if she was "sucking purple dick," and stating that "n***ers smell different" and that he used to belong to the KKK.

59. Based on these comments, Mr. Clark started feeling very threatened at work.

60. On April 29, 2016, Mr. Clark's attorney notified Mr. Harper about the rumors and the head custodian's racist and offensive comments, and she also asked whether Mr. Young and Mr. Dowdle had undergone discrimination training as promised.

61. In response, Mr. Harper indicated that he would investigate the racist comments and that Assistant Superintendent Dowdle had met or would meet with all Transportation employees to let them know that negative rumors must stop.

62. However, Mr. Dowdle did no such thing. Indeed, on April 29. 2016, Mr. Dowdle had a separate meeting with Dispatch, and he instructed the dispatchers as follows: "If you hear something sexual or racial, keep it to yourself." Mr. Dowdle did not instruct the dispatchers to contact their supervisor or H.R. about sexist or racist comments or harassment, as is required by law.

63. Additionally, during the April 29th meeting, Mr. Dowdle threatened the dispatchers with termination, telling Mr. Clark and the other dispatchers: "We're sick of the he-said, she-said. If we find out that any of these allegations are false, we'll move swiftly, including termination."

64. The dispatchers were the only employees who were called into such a meeting. All other Transportation employees received a nicely-worded, vague letter simply stating that Canyons prohibits behavior that contributes to the creation of a hostile work environment.

65. On May 27, 2016, Mr. Harper emailed Mr. Clark's attorney. In the email, Mr. Harper stated that Mr. Young and Mr. Dowdle *still* had not taken discrimination training (as promised).

66. In the May 27th email, Mr. Harper also stated that he had investigated the racist comments by the head custodian, and he had "found no basis to support the allegations of discriminatory conduct of Mr. Clark." However, no one from the District asked the dispatcher in question about the racist comments.

67. In late May 2016, Mr. Clark asked whether he could come to work two weeks before the start of the 2016-2017 school year, so he could undergo further training.

68. Mr. Young and Mr. Harper did not respond to Mr. Clark's request for additional training, and as such, Mr. Clark was not allowed to do additional training. This was contrary to the District's past and current practice – Mr. Aguirre was trained for most of the 2015 summer before he started dispatching during the school year, and another new dispatcher (who was hired in approximately June 2016) trained for most of the 2016 summer before she started dispatching that fall.

69. On June 6, 2016, Canyons disciplined Mr. Clark for an incident that occurred on May 17, 2016, wherein Mr. Clark was unable to locate a child on a bus. This warning was a direct result of Canyons' retaliatory conduct (*e.g.*, failing to train Mr. Clark and leaving him alone to answer the phones, both of which are contrary to Canyons' normal policy and practice).

70. Throughout the summer of 2016, Mr. Clark continued to request training from Canyons, and Canyons continued to ignore his requests.

71. As such, Mr. Clark returned to work at Canyons the following August 2016, with no additional training. Mr. Clark continued to get harassed and mistreated by management.

72. For example, on February 2, 2017, Everette Perry (Canyons' H.R. representative), sent Mr. Clark an email ordering Mr. Clark to answer allegations of misconduct in an attached letter. Mr. Perry threatened Mr. Clark with termination if he did not answer the questionnaire immediately.

73. Canyons' allegations of misconduct dealt with minor issues from January 10, 2017 to February 1, 2017. For example, in one question, Mr. Perry asked Mr. Clark why he (Mr. Clark) did not pass on a message, and in another question, Mr. Perry accused Mr. Clark of

swearing. Swearing was a common occurrence in dispatch, and upon information and belief, Canyons has never disciplined a dispatcher for swearing.

74. Canyons' continued mistreatment of Mr. Clark and its continuing disregard of other Canyons employees' abhorrent comments toward and about Mr. Clark caused Mr. Clark to suffer emotional distress.

75. Based on his emotional distress, Mr. Clark applied to take FMLA leave on February 3, 2017.

76. While Mr. Clark was out on FMLA leave, Mr. Young sent Mr. Clark a negatively biased and incomplete performance evaluation dated February 17, 2017.

77. On February 17, 2017, Canyons also claimed it never received Mr. Clark's FMLA medical certification from Mr. Clark's doctor and sent Mr. Clark a letter advising him that he had exhausted all of his unpaid leave time.

78. Mr. Clark visited his doctor on February 22, 2017, and he watched the doctor fax the necessary FMLA paperwork to Canyons.

79. On February 23, 2017, Canyons sent Mr. Clark a letter indicating that Mr. Clark's employment contract would not be renewed for the following 2017-2018 school year.

80. Canyons terminated Mr. Clark's employment on April 26, 2017.

81. Mr. Clark has suffered significant stress, anxiety, and lost income as a result of his treatment by Canyons.

## FIRST CAUSE OF ACTION
### Hostile Work Environment in Violation of Title VII (against Canyons), and in violation of §1983 and §1981 (against all Defendants)

82. Plaintiff realleges and incorporates by reference all paragraphs set forth above.

83. Mr. Clark is African-American.

84. Defendants created a hostile work environment because of Mr. Clark's race.

85. Defendants' treatment of Mr. Clark was unwelcome and included, but was not limited to: offensive and derogatory racial slurs and comments, refusal to promote Mr. Clark to positions where he was qualified, withholding training in Mr. Clark's job assignments, spreading rumors about him, and manufacturing alleged misconduct regarding Mr. Clark's work performance.

86. Defendants' discriminatory and harassing treatment towards Mr. Clark was so severe and/or pervasive that it altered the conditions of his employment and had an adverse impact on his working environment, and ended in the improper termination of his employment.

87. Canyons knew of the harassment and hostile environment perpetrated by its managers and Mr. Clark's co-workers, and failed to take immediate and appropriate remedial action.

88. Moreover, Canyons is directly liable for the hostile work environment created and maintained by its supervisory level employees.

89. Defendants acted under color of state law when committing the acts complained of.

90. Defendants have a custom and practice of failing to ensure a harassment free workplace and failing to take appropriate remedial measure to prevent ongoing harassment.

91. As a result of Defendants' unlawful conduct, Mr. Clark is entitled to recover damages for lost wages and benefits and prejudgment interest on those amounts. He is also entitled to compensatory and emotional distress damages in an amount to be proven at trial.

92. Additionally, Mr. Clark is entitled to recover all attorneys' fees and costs expended in prosecuting this action.

93. Defendants' unlawful conduct toward Mr. Clark was done with reckless disregard for his federally protected rights, and as such, Defendants should be subject to punitive damages as well.

## SECOND CAUSE OF ACTION
**Race Discrimination and Failure to Promote in Violation of Title VII (against Canyons), and in violation of §1983 and §1981 (against all Defendants)**

94. Plaintiff incorporates the allegations contained in the paragraphs above as if fully set forth herein.

95. Mr. Clark's race is African American.

96. Mr. Clark was qualified to perform his job.

97. Defendants discriminated against Mr. Clark by failing to promote him in favor of less-qualified employees not in Mr. Clark's protected class, and by treating employees not in Mr. Clark's protected class more favorably in discipline and working conditions. As a result of Defendants' discrimination, Mr. Clark was terminated.

98. Defendants acted under color of state law when committing the acts complained of.

99. Defendants have a custom and practice of failing to make hiring and promotion and disciplinary decisions free from discrimination.

100. As a result of Defendants' unlawful conduct, Mr. Clark is entitled to recover damages for lost wages and benefits and prejudgment interest on those amounts. He is also entitled to compensatory and emotional distress damages in an amount to be proven at trial.

101. Additionally, Mr. Clark is entitled to recover all attorneys' fees and costs expended in prosecuting this action.

102. Defendants' unlawful conduct toward Mr. Clark was done with reckless disregard for his federally protected rights, and as such, Defendants should be subject to punitive damages as well.

### THIRD CAUSE OF ACTION
### Retaliation in Violation of Title VII (against Canyons), and in violation of §1983 and §1981 (against all Defendants)

103. Plaintiff realleges and incorporates by reference all paragraphs set forth above.

104. Mr. Clark exercised a constitutional right by repeatedly reporting discrimination and harassment to Defendants in good faith alleging numerous violations of 42 U.S.C. §1981, 42 U.S.C. §1983, and Title VII.

105. Specifically, he reported that he was singled out for discrimination and harassment because of his race.

106. Defendants took multiple adverse actions against Mr. Clark as a result of his reports of discrimination and harassment. These actions include but are not limited to: failure and refusal to correct and prevent racial discrimination, failure to promote, failure to train, hostile work environment by alienating Mr. Clark from his co-workers, and job termination.

107. Defendants have a custom and policy of retaliating against those who report unlawful discrimination and harassment.

108. Defendants' retaliation and ultimate termination of Mr. Clark is causally linked to his protected activity.

109. Defendants' acts would likely have deterred a person of ordinary firmness from reporting discrimination and harassment.

110. As a result of Defendants' unlawful conduct, Mr. Clark is entitled to recover damages for lost wages and benefits and prejudgment interest on those amounts. He is also entitled to compensatory and emotional distress damages in an amount to be proven at trial.

111. Additionally, Mr. Clark is entitled to recover all attorneys' fees and costs expended in prosecuting this action.

112. Defendants' unlawful conduct toward Mr. Clark was done with reckless disregard for his federally protected rights, and as such, Defendants should be subject to punitive damages as well.

## FOURTH CAUSE OF ACTION
### (Retaliation in violation of the FMLA, against Canyons)

113. Plaintiff incorporates the allegations contained in the paragraphs above as if fully set forth herein.

114. Canyons is an employer as defined under the FMLA.

115. Mr. Clark is an employee of Canyons.

116. Mr. Clark requested leave from work because of a serious health condition.

117. Canyons retaliated against Mr. Clark by refusing to renew his employment contract.

118. Defendant's conduct violated § 2615(a)(2) of the FMLA, and it is liable to Plaintiff for all lost wages and benefits, as well as prejudgment interest on those losses.

119. In addition, Plaintiff is entitled to an additional amount as liquidated damages equal to the damages plus prejudgment interest thereon, reasonable attorney's fees, reasonable expert witness fees and any other costs of this action, and such other and further equitable relief as this Court deems appropriate (including reinstatement, promotion and/or front pay).

## REQUEST FOR JURY TRIAL

Plaintiff requests that this matter be tried before a jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against the Defendant,

I. For Plaintiff's lost wages, compensation, and benefits;

II. For compensatory damages;

III. For general damages including emotional distress;

IV. For punitive damages;

V. For Plaintiff's reasonable attorneys' fees, including expert witness fees as provided by 42 U.S.C. §1988 and 42 U.S.C. §2000e-5;

VI. For pre-judgment and post-judgment interest at the highest lawful rate;

VII. For costs of court and such other relief as the court deems just and equitable.

DATED this 19th day of October, 2017.

**STRINDBERG & SCHOLNICK, LLC**

/s/ Kass Harstad
Kathryn Harstad
*Attorneys for Plaintiff*

Plaintiff's Address: